1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8   | WENDY J. PRICE,                              2:11-CV-1242 JCM (VCF)
9   |              Plaintiff(s),
10  | v.
11  | COMPUTER SCIENCES
12  | CORPORATION,
13  |              Defendant(s).
14

15                                **ORDER**

16          Presently before the court is defendant's, Computer Sciences Corporation, motion for

17  summary judgment.  (Doc. # 22).  Plaintiff Wendy Price has filed a response (doc. # 25), and

18  defendant filed a reply (doc. # 28).

19  **I.      Background**

20          Defendant has a contract whereby it provides base operations and range support services to

21  the United States Air Force at a classified location in Nevada.  At all relevant times, plaintiff worked

22  for defendant as a captain in the fire department.  Plaintiff was promoted to captain, from lieutenant,

23  on November 24, 2003.  In 2005, plaintiff went on maternity leave and returned to her captain

24  position in 2006.  The captain position is a management, non-union position.  The non-management

25  positions under captain are union positions governed by a collective bargaining agreement.[1]

26

27          [1] Non-exhaustive examples of positions covered by the collective bargaining agreement

28  include lieutenants, firefighters, and dispatchers.

**James C. Mahan**
**U.S. District Judge**

In August 2009, due to pregnancy complications, plaintiff requested a leave of absence effective August 24, 2009, with an expected return date of May 16, 2010.  Plaintiff was granted 12 weeks of job-protected leave in accordance with the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601.  However, due to the pregnancy, plaintiff would not be able to return to work in 12 weeks or less.

In addition to FMLA protections, defendant also maintains its own "leaves of absence without pay" ("LOA") policy.  The LOA policy provides for unpaid medical leave for up to 12 months.  However, LOA is not job protected.  After the expiration of the 12 weeks of job protection provided by FMLA, or any other laws, an employee of defendant may stay on unpaid medical leave, but defendant does not have an obligation to reinstate the employee to his or her position.  Under the LOA policy, the entitlement to reinstatement exists only if defendant has a vacancy for which the returning employee is qualified.

On December 1, 2009, defendant advised plaintiff that her 12 weeks of FMLA leave had been exhausted as of November 16, 2009, and that her leave had been converted to a medical LOA (non-FMLA) leave.  The medical LOA leave provided plaintiff with the ability to remain on unpaid leave until August 2010; however, the LOA leave did not guarantee that defendant would, or had any obligation, to reinstate plaintiff to the same or any other position.

In February 2010, after plaintiff's FMLA job protected leave had expired, defendant filled plaintiff's vacant captain position with a male employee, Mike Schoff.  On May 24, 2010, plaintiff gave defendant a medical note indicating that she would be able to immediately return to light duty, and could resume her full duties without restriction on July 1, 2010.  On July 9, 2010, defendant laid off plaintiff.

Defendant alleges that there were no positions that plaintiff was qualified for when she was eligible to return to work on July 9, 2010.  Defendant maintains that it laid off plaintiff according to its policy of laying off any employee whose position (or any other position they may be qualified for) is no longer vacant upon the employee's return.

. . .

1    Plaintiff alleges that defendant discriminated against her because of her pregnancy. Plaintiff

2    alleges that defendant has reinstated males after the expiration of FMLA job protected leave but still

3    within the one year window of LOA unprotected leave. Plaintiff alleges that, in fact, defendant filled

4    positions with males that she was qualified for when she returned to work. Plaintiff filed the instant

5    lawsuit against defendant alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

6    § 2000e and/or NRS 613.335. The complaint was filed in state court on June 27, 2011, and served

7    on defendant on July 13, 2011. The defendant removed the action to this court on August 2, 2011.

8    On September 9, 2010, plaintiff filed a chapter 7 bankruptcy. Price indicated that there were

9    no contingent or unliquidated claims of any nature on her schedule B. In her statement of financial

10   affairs which requires a listing of "all suits and administrative proceedings to which the debtor is or

11   was a party within one year immediately preceding the filing of this bankruptcy case," plaintiff listed

12   "none." Plaintiff's schedule claims totaled $1,119,519.07. Plaintiff was discharged from her debts

13   on December 16, 2010.

14   **II.    Legal Standard**

15   The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

16   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

17   show that "there is no genuine issue as to any material fact and that the movant is entitled to a

18   judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

19   "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,

20   323–24 (1986).

21   In determining summary judgment, a court applies a burden-shifting analysis. "When the

22   party moving for summary judgment would bear the burden of proof at trial, it must come forward

23   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

24   In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

25   of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

26   F.3d 474, 480 (9th Cir. 2000) (citations omitted).

27   . . .

28

James C. Mahan
U.S. District Judge

- 3 -

1    In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

2    moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential

3    element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

4    make a showing sufficient to establish an element essential to that party's case on which that party

5    will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

6    fails to meet its initial burden, summary judgment must be denied and the court need not consider

7    the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

8    If the moving party satisfies its initial burden, the burden then shifts to the opposing party

9    to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

10   *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

11   party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

13   of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

14   Cir. 1987).

15   In other words, the nonmoving party cannot avoid summary judgment by relying solely on

16   conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

17   (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

18   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

19   for trial.  *See Celotex Corp.*, 477 U.S. at 324.

20   At summary judgment, a court's function is not to weigh the evidence and determine the

21   truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*,

22   477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable

23   inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is

24   merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at

25   249–50.

26   **III.    Title VII Discrimination**

27   42 U.S.C. § 2000e(k) states that "women affected by pregnancy, childbirth, or related medical

28

James C. Mahan
U.S. District Judge

- 4 -

1  conditions shall be treated the same for all employment-related purposes . . . as other persons not so
2  affected but similar in their ability or inability to work. . . ."

3       A.      *Prima Facie Case*

4       Title VII claims are to be analyzed through the burden-shifting framework of *McDonnell*
5  *Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "Under this analysis, plaintiffs must first establish
6  a prima facie case of employment discrimination."  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151,
7  1155 (9th Cir. 2010).  "Establishing a prima facie Title VII case in response to a motion for summary
8  judgment requires only minimal proof and does not even need to rise to the level of a preponderance
9  of the evidence."  *Palmer v. Pioneer Assocs, Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (internal
10  citations and quotations omitted).

11       "Individuals are similarly situated when they have similar jobs and display similar conduct."
12  *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009).  "The employees need
13  not be identical; they must simply be similar in all material respects."  *Id.* (internal citations,
14  quotations, and alterations omitted).

15       Plaintiff argues that she is similarly situated to defendant's male employees who stayed out
16  on medical leave past their job-protected FMLA leave but shorter than the 12 months allotted by
17  LOA unprotected leave.  Plaintiff argues that she was subject to the same leave policies as the male
18  employees; however, defendant's male employees were permitted to return to their positions during
19  LOA unprotected leave but plaintiff was not.  Also, plaintiff argues there were positions she was
20  qualified for when she returned to work.

21       Defendant argues that she is not similarly situated to the male employees out longer than 12
22  weeks but less than 12 months because the positions of those males just happened to still be vacant
23  when they returned to medical leave.  Defendant argues that plaintiff is part of a different class
24  because when she returned there were no captain positions or firefighter positions.

25       Plaintiff can establish a prima facie case.  Plaintiff returned to work on May 24, 2010, with
26  the qualification that she was only able to perform light duty work.  Plaintiff alleges that a dispatcher
27  position was available on May 24, 2010, and that she was qualified for the dispatcher position.

28

James C. Mahan
U.S. District Judge

Plaintiff also points out, correctly, that defendant became aware on May 24, 2010, that plaintiff would become available for full duty on July 1, 2010.  Further, plaintiff's 12 month LOA unprotected leave would not expire until August 2010.  Defendant laid off plaintiff before the expiration of LOA leave on July 9, 2010.  Plaintiff argues that in this window from May 2010, to August 2010, defendant hired three male firefighter techs and promoted four male firefighters.

Finally, plaintiff argues that the following five male employees were on medical leave longer than 12 weeks but less than 12 months and returned to their positions: Glenn Allessandro; lieutenant Pedro Martinez; lieutenant Brett Ruff; engineer Frederick Gonzalez; and engineer James Silva.

Plaintiff has properly established a prima facie case.

B.      *Legitimate, Nondiscriminatory Reasons*

"If plaintiffs establish a prima facie case, the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (internal citations and quotations omitted).  "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id.*

Defendant addresses each of the alleged open positions and incidents that plaintiff believes demonstrates discrimination.

i.      Dispatcher Position

First, it is true that defendant hired Rian Heide, a male, to fill the open dispatcher position. However, Mr. Heide began work as a dispatcher on May 24, 2010, which is the very same date that plaintiff brought her light duty note to defendant.  Mr. Heide began working on May 24, 2010, meaning the position had already been filled by the time plaintiff informed defendant she was eligible for light duty.

The necessary paperwork to place Mr. Heide into the dispatcher position began well prior to May 24, 2010, before plaintiff delivered her light duty note.  Further, Mr. Heide was a union employee and would have had to been fired without cause to make the position open for plaintiff, which would have exposed defendant to a union grievance.  Defendant has offered legitimate,

James C. Mahan
U.S. District Judge

1    nondiscriminatory reasons for not placing plaintiff in the dispatcher position.

2              ii.     Firefighter Techs

3          Plaintiff alleges that three firefighter techs were hired from May to June 2010. This is true.

4    The following three males were hired as firefighter techs: Nestor Rodriguez, hired on June 7, 2010;

5    Larry Faust, hired on June 7, 2010; and, Shaun Reeve, hired on June 28, 2010.

6          A firefighter tech position is not a light duty position. Again, plaintiff produced her note

7    making her eligible for light duty work on May 24, 2010. That same note stated that plaintiff could

8    not resume unrestricted work until July 1, 2010. These three firefighter tech positions were all filled

9    (1) before plaintiff could resume unrestricted work and (2) during the time interval after the 12

10   weeks of FMLA job-protected leave where an employee can remain on unprotected leave of absence

11   (LOA) but company policy does not guarantee there will be an available position.

12         Paperwork began on May 24, 2010, to fill the two firefighter tech positions that were

13   formally filled on June 7, 2010. This was the date that plaintiff brought her note authorizing her for

14   light duty. These two firefighter tech positions needed to be filled before plaintiff was authorized

15   to perform non-restricted work. The paperwork began on June 7, 2010, to fill the firefighter tech

16   position actually filled on June 28, 2010. This position, also, needed to be filled before plaintiff was

17   eligible to return to non-restricted work.

18         Plaintiff was not authorized to return to non-restricted work until July 1, 2010. Defendant

19   needed to fill three firefighter tech positions before that date, and did so. The LOA unprotected

20   medical leave (up to 12 months) policy did not require defendant to keep these positions open for

21   plaintiff. Defendant has successfully offered legitimate, nondiscriminatory reasons for the firefighter

22   tech positions.

23             iii.    Four Male Firefighter Promotions

24         Plaintiff alleges that four male firefighters were promoted while she was on LOA unprotected

25   medical leave. Defendant responds to each allegation.

26         It is true that there were four "step-progressions," or promotions, that occurred between May

27   24, 2010, and August 23, 2010. Plaintiff's 12 months of LOA unprotected medical leave was set

28

James C. Mahan
U.S. District Judge

- 7 -

to expire in August 2010.  Specifically, these four step-progressions all occurred after July 9, 2010, the date of plaintiff's termination.  The following four males received a step-progression in the relevant time period: Charles Montanaro, promoted on July 12, 2010; Carroll Alexander, promoted on August 16, 2010; Randy Salvador, promoted on August 16, 2010; and Michael McPride, promoted on August 23, 2010.

Step-progressions are governed by the collective bargaining agreement.  After one year of service, a firefighter tech  moves into a firefighter I position with a resulting increase in pay.  This is the only way these positions are filled.  Charles Montanaro was promoted from a firefighter tech to a firefighter I on July 12, 2010.  This promotion was dictated by the terms of the collective bargaining agreement.  While Charles Montanaro was promoted three days after plaintiff was fired, the paperwork for the step-progression commenced before plaintiff even produced her light duty note on May 24, 2010.  Further, plaintiff was not even eligible for the firefighter I position because she was not a firefighter tech, or any other union position, and if she had been placed in the firefighter I position it would have triggered a union grievance.

On August 16, 2010, after plaintiff was laid off, defendant promoted Carroll Alexander from firefighter tech to firefighter I.  On August 23, 2010, defendant promoted Michael McPride from firefighter tech to firefighter I.  The same collective bargaining agreement rules governed these promotion and plaintiff was ineligible for all the same reasons.

Finally, on August 16, 2010, defendant promoted Randy Salvador from firefighter II-EMT-I to firefighter III-EMT-1.  This promotion, or step-progression, was similarly dictated by the terms of the collective bargaining agreement.  Plaintiff was not eligible for the position and defendant would have subjected itself to a union grievance if it had filled the position with plaintiff.

Defendant has met its burden of production by offering legitimate, nondiscriminatory reasons why four males were "promoted" around the time plaintiff was laid off.

           iv.     Five Similarly Situated LOA Unprotected Medical Leave Males

Plaintiff alleges that all the following males were allowed to return to their positions after the expiration of their FMLA job-protected leave, but while still on LOA unprotected leave: Glenn

1   Allessandro; lieutenant Pedro Martinez; lieutenant Brett Ruff; engineer Frederick Gonzalez; and

2   engineer James Silva.

3          Defendant admits these men were allowed to return to their positions after the expiration of

4   the 12 weeks FMLA job-protected window but still within 12 month LOA unprotected window

5   because, simply, their positions were open.[2]  Defendant corroborates this, like all their summary

6   judgment evidence, with properly authenticated evidence and exhibits.

7          What plaintiff cannot show is that defendant allowed a male employee to return to work

8   during LOA unprotected medical leave when there was no position open.  Defendant has met its

9   burden to show legitimate, nondiscriminatory reasons for its conduct and decisions.

10                 v.       Lieutenant Taking Plaintiff's Captain Position

11         Defendant eventually filled plaintiff's captain position with a lieutenant.  Plaintiff's FMLA

12  job-protected leave expired on November 16, 2009.  Therefore, according to defendant's policy,

13  defendant could have filled the captain position as early as November 17, 2009.  Plaintiff was well

14  aware of this policy and received a letter confirming this policy on December 1, 2009.

15         Defendant waited until February 2010, to fill the captain position.  Defendant waited

16  approximately three months after the expiration of FMLA job-protected leave to fill plaintiff's

17  position.  Defendant left the position open for a longer period of time than required by its medical

18  leave policies.  Also, defendant filled the position about three months prior to the date plaintiff

19  produced her note releasing her to light duty on May 24, 2010.  Defendant could not have a

20  discriminatory intent because defendant, at the time it filled plaintiff's captain position, had no idea

21  when plaintiff would return to work.

22         Defendant was being stretched thin at the captain position, so defendant made a business

23  decision to fill the position based on needs of the company.  There are only five captain positions

24  _____

25         [2] Defendant also points out that there are more of these types of positions (firefighters and
   engineers) in its workforce.  This is significant for at least two reasons: (1) there is a greater
26  likelihood one of these types of positions will be open if a person with this position returns from
   LOA unprotected leave; and (2) there are more employees to cover these types of shifts if an
27  employee is out on LOA leave.  There were far fewer captain positions–only five total.  The vast
   majority of the workforce cannot cover a captain shift or position.
28

James C. Mahan
U.S. District Judge

1   and when plaintiff was out on leave there were only four captains.  After being without one of its five

2   captains for about six months, defendant decided to fill the position.  Defendant has offered

3   legitimate, nondiscriminatory reasons for its decisions and conduct in filing the captain position.

4          C.     *Pretextual*

5         "A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's

6   proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not

7   believable, or (2) directly, by showing that unlawful discrimination more likely motivated the

8   employer."  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 11710 (9th Cir. 2007) (internal citations,

9   quotations, and alterations omitted).  "All the evidence as to pretext–whether direct or indirect–is

10  to be considered cumulatively." *Id.*

11        The plaintiff has offered no reasons why defendant's offered legitimate, nondiscriminatory

12  reasons are merely a pretext for discrimination.  Plaintiff states only that defendant's offered

13  "business reasons" are not sufficient.  The court finds to the contrary that the defendant offered

14  reasons are not pretextual, but, rather, were dictated by business needs.

15  **IV.   Judicial Estoppel**

16        As discussed in the facts in section I *supra*, plaintiff's termination occurred on July 9, 2010.

17  She filed her bankruptcy on September 9, 2010.  Plaintiff knew of the facts giving rise to this

18  litigation two months prior to her filing of bankruptcy.  Plaintiff filed the lawsuit in June 2011, about

19  nine months after the filing of bankruptcy.  However, plaintiff filed her charge of discrimination with

20  the Nevada Equal Rights Commission ("NERC") on June 4, 2010.  She filed this charge three

21  months prior to filing her bankruptcy.

22        "[F]ederal law governs the application of judicial estoppel in federal court."  *Rissetto v.*

23  *Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).  Judicial estoppel is invoked

24  "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also

25  because of general considerations of the orderly administration of justice and regard for the dignity

26  of judicial proceedings, and to protect against a litigant playing fast and loose with the courts."

27  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  "The application of

28  

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation,

2  but is also appropriate to bar litigants from making incompatible statements in two different cases."

3  *Id.* at 783.

4       Courts consider three factors when deciding whether to apply the doctrine.  *Id.* at 782-83.

5  First, "a party's later position must be clearly inconsistent with its earlier position."  *Id.* at 782.

6  Second, a court should consider "whether the party has succeeded in persuading a court to accept that

7  party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding

8  would create the perception that either the first or the second court was misled."  *Id.* at 782.  The

9  third and final consideration is "whether the party seeking to assert an inconsistent position would

10 derive an unfair advantage or impose an unfair determent on the opposing party if not estopped."

11 *Id.* at 783.

12      At the commencement of bankruptcy, a debtor must disclose all of his assets to be included

13 in the bankruptcy estate for the potential benefit of creditors.  11 U.S.C. § 521(1); *see also Cusano*

14 *v. Klein*, 264 F.3d 936, 945–46 (9th Cir. 2001).  The bankruptcy estate includes all the debtor's

15 potential claims or causes of action that existed at the time he or she filed for bankruptcy. 11 U.S.C.

16 § 541(a)(1); *see also In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997); *In re Coastal Plains, Inc.*, 179

17 F.3d 197, 208–208 (5th Cir. 1999) ("[i]t goes without saying that the Bankruptcy Code and Rules

18 impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including

19 contingent and unliquidated claims.") (italics in original).  A debtor need only have "knowledge

20 enough of the facts to know that a cause of action exists during the pendency of the bankruptcy."

21 *Hamilton*, 270 F.3d at 783 (9th Cir. 2001).

22      A party's failure to disclose causes of action results in judicial estoppel.  "[I]n the bankruptcy

23 context, a party is judicially estopped from asserting a cause of action not raised in a reorganization

24 plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.* at 783; *see also*

25 *Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555, 557 (9th Cir. 1992); *Coastal Plains*, 179

26 F.3d at 208 (debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Oneida*

27 *Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988) (debtor's failure to list

28

**James C. Mahan**
**U.S. District Judge**

- 11 -

1  potential claims against a creditor "worked in opposition to preservation of the integrity of the
2  system which the doctrine of judicial estoppel seeks to protect," and debtor was estopped by reason
3  of such failure to disclose).

4          It cannot be contested that plaintiff knew of the facts given rise to the litigation and filed a
5  charge with the NERC prior to the filing of the bankruptcy proceeding.  It is further uncontested that
6  plaintiff did not list her charge with NERC and the potentially resulting lawsuit on her bankruptcy
7  petition.  For "other contingent and unliquidated claims of every nature," plaintiff listed "none."
8  Judicial estoppel further bars plaintiff from bringing these claims because she did not list her charge
9  as an asset and she obtained a discharge of over one million dollars in debt.  *See EEOC. v. Dave's*
10  *Detailing, Inc.*, no. 3:07-cv-516-S, 2008 WL 1968315, at *2 (W.D. Ky. May 2, 2008) ("There are
11  numerous cases within the Sixth Circuit in which judicial estoppel has been applied to bar a
12  plaintiff's civil claims where the plaintiff has failed to disclose the existence of those claims as an
13  asset in her bankruptcy proceeding."); *Wright v. Guess*, no. 3:08-4130, 2010 WL 348377 (D.S.C.
14  Jan. 25, 2010).

15          Accordingly,

16          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for
17  summary judgment (doc. # 22) be, and the same hereby, is GRANTED.  Defendant is instructed to
18  submit a proposed judgment consistent with this order.

19          DATED January 3, 2013.

21  _____
    UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 12 -